UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


James T. Burke,

        Petitioner,

        v.                                      Civil Action No. 2:12-cv-197

Andrew Pallito, Commissioner,
Vermont Department of Corrections,

        Respondent.


## REPORT AND RECOMMENDATION
(Docs. 4, 30, 33, 40)

James T. Burke, proceeding *pro se*, petitions the Court for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  In May 2010, a Vermont jury convicted Mr. Burke of one

count of sexual assault in violation of 13 V.S.A. § 3252(a)(1), and the Vermont Supreme

Court affirmed that conviction in June 2012.  *State v. Burke*, 2012 VT 50, 54 A.3d 500,

*motion for reargument denied*, No. 2010-437 (Vt. July 11, 2012), *motion for*

*reconsideration denied*, No. 2010-437 (Vt. July 30, 2012), *cert. denied*, 133 S. Ct. 795

(2012).[1]  Mr. Burke's Petition (Doc. 4) asserts a variety of constitutional claims,

including ineffective assistance of counsel, insufficiency of the evidence, and speedy trial

violations.

Respondent has filed a Renewed Motion to Dismiss the Petition without prejudice

(Doc. 30), arguing that, in light of Mr. Burke's petition for post-conviction relief filed

---

[1] Familiarity with the Vermont Supreme Court's opinion in *Burke* is presumed.

recently in Vermont Superior Court pursuant to 13 V.S.A. § 7131, this Court should

dismiss the Petition without prejudice to allow Petitioner to exhaust all of his claims in

state court.  Petitioner has filed a Motion for Summary Judgment (Doc. 33) and a

separate Statement of Undisputed Material Facts (Doc. 35), reiterating his claims.

Respondent has filed a Cross-Motion for Summary Judgment (Doc. 40), arguing that

Petitioner's claims lack merit or are unexhausted.  For the reasons set forth below, I

recommend that Respondent's Renewed Motion to Dismiss be DENIED, that Mr.

Burke's Motion for Summary Judgment be DENIED, and that Respondent's Cross-

Motion for Summary Judgment be GRANTED.

## Factual and Procedural Background

On direct appeal to the Vermont Supreme Court, Mr. Burke argued that:

> (1) he was denied a speedy trial; (2) the trial court abused its discretion by
> excluding evidence that complainant made false accusations of sexual
> assault in the past; (3) the court erred by refusing to allow him to present
> evidence of complainant's past convictions; (4) the court erred by denying
> his motion to proceed pro se and by ordering him shackled in court; (5) the
> court improperly imposed a fixed term of imprisonment; and (6) the court
> should have granted his motion for a new trial.

*Burke*, 2012 VT 50, ¶ 1.  He also attempted to raise a number of "other issues," which the

Supreme Court summarily disposed of in a footnote, stating that they were meritless or

inadequately briefed.  *Id.* at n.*.  The Court rejected each of Mr. Burke's arguments on

direct appeal and affirmed his conviction.  *Id.* ¶ 1.  In an Entry Order filed on

July 11, 2012, the Court denied Mr. Burke's motion to reargue, and explicitly stated that

it would not address his ineffective-assistance claim because such a claim may not be

2

raised in the context of a direct appeal.  (Doc. 30-1, Resp't's Renewed Mot. to Dismiss

Ex. J.)[2]

    Mr. Burke filed the Petition in this case on September 4, 2012, and alleges as

follows:

> Ground One: Defense evidence unlawfully precluded of actual innocence, Violations of the 5th, 6th, 8th, 9th, and 14th Amendments to the U.S. Const[itution].
>
> (a) Supporting facts . . . : Ineffective assistance of Counsel on all issues as stated in Petitioner[']s Opening Brief, Proffered defense evidence of false sexual misconduct allegations and defendant[']s stolen property by [complainant] to show a[n] ULTERIOR MOTIVE for her to make another false sexual misconduct allegation unlawfully suppressed, Relevant defense evidence unlawfully suppressed that showed a colorable claim of actual innocence, Defendant[']s defense unlawfully prevented from arguing theory of the defense case, Unlawfully picked sexually assaulted jury who most admitted were victims of sexual misconduct, Violations of a defense stipulation as documented in defendant[']s Opening Brief, Violations of Judge Keller's prior rulings for the defense excluding the use of the term "Victim" and Rape", The Trial Court erred by refusing to instruct the jury on the defense of voluntary intoxication, Violations of defendant[']s Const[itutional] Rights to confront. . . .
>
> Ground Two . . . Supporting facts . . . : Violations of the 5th, 6th, 9th, and 14th Amendments to the United States Const[itution] to the correct due process and equal protection of the laws, Violations of Rights retained by the Petitioner, Violation to be free from cruel and harsh punishment of a[n] innocent defendant, Violations to due process of law, Relevant defense evidence unlawfully suppressed that showed a colorable claim of actual innocence, Defense unlawfully prevented from arguing defense theory of case, Unlawfully picked sexually assaulted jury who most admitted were victims of sexual misconduct, Violations of a Defense Stipulation as documented in the Opening Brief, Violations of Judge Keller's prior rulings for the defense and the excluding of the use of the term "Victim" and "Rape" etc. 8th Amend[ment].

(Doc. 4 at 5–7.)

---

    [2]  The Vermont Supreme Court's July 11, 2012 Entry Order is a public record appropriate for consideration on a motion to dismiss.  *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

Respondent initially moved to dismiss Mr. Burke's petition on the ground that at least one of his claims—ineffective assistance of counsel—had not been exhausted in Vermont state court.  (Doc. 8.)  Mr. Burke opposed the motion, arguing that his Petition contained only exhausted claims, but also asked the Court to "[a]mend out of the [P]etition" his ineffective-assistance-of-counsel claim if "it is the most fair way to proceed."  (Doc. 9 at 22.)  In an Order filed on December 4, 2012, I noted that Mr. Burke's request to "[a]mend out" his ineffective-assistance-of-counsel claim was ambiguous because it was unclear how he wanted to proceed if he did not prevail on his argument that his Petition contained only exhausted claims.  (Doc. 12 at 2–3.)  I therefore ordered Mr. Burke to inform the Court whether, in the event the Court found his ineffective-assistance-of-counsel claim unexhausted, he wished for the Court to delete that claim and proceed with the Petition's exhausted claims.  (*Id.* at 3.)  In three separate filings, Mr. Burke indicated that that was his wish.  (Docs. 13, 14, 15.)

In a Report and Recommendation dated January 18, 2013, I concluded that Mr. Burke's ineffective-assistance-of-counsel claim was unexhausted, and pursuant to Mr. Burke's request (Docs. 13, 14, 15), I recommended that the claim be deleted from his Petition, and that this action proceed with the remaining claims.  (Doc. 22 at 9.)  The District Court adopted that recommendation.  (Doc. 25 at 1–2.)

On February 25, 2013, Mr. Burke filed a post-conviction relief (PCR) petition with the Vermont Superior Court, Chittenden Unit, Civil Division.  (Doc. 30-1, Resp't's

Renewed Mot. to Dismiss Ex. R.)[3]  In his PCR petition, Mr. Burke asserts his ineffective-assistance-of-counsel claim.  (*See id.* at 4, 6, 7, 20–22.)  However, he also appears to attempt to challenge the Vermont Supreme Court's rulings on all of the issues he raised in his direct appeal, arguing that the Supreme Court's decision is in conflict with his constitutional rights.  (*See, e.g.*, *id.* at 1, 2, 6.)  Additional factual background is set forth as necessary below.

<u>**Discussion**</u>

## I.      **Respondent's Renewed Motion to Dismiss**

Noting that Mr. Burke had failed to exhaust his ineffective-assistance-of-counsel claim, Respondent contends that, "[t]o the extent that the petition can also be construed to raise claims other than the six claims raised in the direct appeal to the Vermont Supreme Court, such additional claims would also be unexhausted."  (Doc. 30 at 11.)  Respondent consequently seeks dismissal of the Petition without prejudice.  (*Id.*)  Mr. Burke opposes dismissal, arguing that exhaustion was satisfied, and that "circumstances ex[]ist in this case that render[] [the] State of Vermont P.C.R. corrective process ineffective pursuant to 28 U.S.C. []§ 2254(b)(1)(B)(i) & (ii)."  (Doc. 32 at 1.)[4]  Because he believes the Vermont

---

[3]  Mr. Burke's filings for post-conviction relief with the Vermont Superior Court are matters of public record, and it is appropriate to consider them without converting Respondent's Renewed Motion to Dismiss into a motion for summary judgment.  *Blue Tree Hotels*, 369 F.3d at 217.

[4]  Section 2254(b)(1) provides as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

state courts cannot fairly adjudicate his PCR petition, Mr. Burke asks this Court to "amend back into this [habeas case] the ineffective assistance [of] counsel claim and allow the Petitioner to request dismissal of the State Court P.C.R. [petition]." (*Id.* at 32–33.)

### A.      Exhaustion

Federal habeas relief from a state court conviction generally may not be granted unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Respondent's (renewed) exhaustion argument is premised on the assumption that at least some of the remaining claims in Mr. Burke's Petition were not raised in his direct appeal, and are thus not exhausted. For the reasons discussed below, that premise is incorrect.

As noted above, in its opinion in *State v. Burke*, the Vermont Supreme Court identified, discussed, and ultimately rejected six of Mr. Burke's contentions on appeal. 2012 VT 50, ¶ 1. However, the Supreme Court also acknowledged other arguments that Mr. Burke attempted to raise in his direct appeal, and declined to address those arguments because they were meritless or inadequately briefed. *See id.* at n.* ("To the extent that defendant raises other issues in his brief, the claims have no merit or are inadequately briefed, or both, and are therefore not addressed in this opinion."). I have reviewed Mr. Burke's appellate brief to the Vermont Supreme Court in his direct appeal. (Doc. 30-1, Resp't's Renewed Mot. to Dismiss Ex. B.)[5] Although Mr. Burke's filings are not a

---

[5] Mr. Burke's filings with the Vermont Supreme Court are matters of public record, and it is appropriate to consider them in the present procedural context.

model of clarity, I conclude that the "other issues" he attempted to raise in his direct appeal included: (1) ineffective assistance of counsel (*id.* at 30–33); (2) insufficient evidence and actual innocence (*id.* at 22, 34); (3) juror bias (*id.* at 6); (4) prosecutorial misconduct (i.e., alleged reneging on stipulation regarding use of a "date rape" drug; withholding exculpatory evidence) (*id.* at 7, 21, 28, 32); (5) violation of Judge Keller's ruling excluding the use of the term "victim" (*id.* at 9–10); (6) failure to give voluntary intoxication, diminished capacity, and lesser-included-offense charges (*id.* at 12, 19, 31–32); and (7) judicial bias and misconduct (*id.* at 18, 21–22, 32).

A comparison of Mr. Burke's "other claims" in his direct appeal to his claims in the present habeas corpus case reveals that the claims he is pursuing here have all been presented to the Vermont Supreme Court, and have thus been exhausted.[6]  That was perhaps implicit in my earlier Report and Recommendation, where I recommended that the ineffective-assistance claim be deleted and that "this action proceed with the remaining claims."  (Doc. 22 at 9.)  I now explicitly conclude that Mr. Burke's "remaining claims"—that is, all of his claims other than ineffective assistance—are exhausted.

### B.    Ineffective-Assistance Claim and PCR Case

Mr. Burke's request to bring his ineffective-assistance-of-counsel claim back into this habeas corpus case is apparently a renewal of his argument that the exhaustion

---

[6]  The exception is Mr. Burke's ineffective-assistance-of-counsel claim.  Mr. Burke attempted to raise that claim in his direct appeal, but, as this Court previously concluded, the claim is not exhausted. (Doc. 22 at 5; Doc. 25 at 1–2.)  The Vermont Supreme Court does not ordinarily consider a claim of ineffective assistance on direct appeal, and thus the procedural posture in which Mr. Burke previously attempted to raise that claim did not permit the Supreme Court to reach its merits.  (Doc. 22 at 5.)  As noted above, the ineffective-assistance claim has been deleted from Mr. Burke's Petition.

requirement for that claim should be waived because the Vermont state court judges are corrupt and cannot fairly adjudicate his claims.  This Court has already rejected that argument.  (Doc. 22 at 7–8; Doc. 25 at 1.)  To the extent that Mr. Burke seeks reconsideration of that decision, that request should be DENIED, and the Court should leave the ineffective-assistance claim to be adjudicated in the Vermont Superior Court.

Respondent notes that Mr. Burke has raised the same claims of error in his PCR case that he raises in this case, and contends the principles of comity and federalism preclude litigating substantially identical claims simultaneously in state and federal court. (Doc. 30 at 15.)  Those considerations are indeed at the heart of the exhaustion requirement for federal habeas relief.  *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982).  However, because Mr. Burke's remaining claims—other than ineffective assistance—are exhausted, the PCR court will not likely entertain those claims.  Since the remaining claims have already been rejected by Vermont's highest court on direct appeal, the PCR court lacks jurisdiction to review them.  *See* 4 V.S.A. § 31 (jurisdiction of Vermont Superior Court, Civil Division); *Daniels v. Elks Club of Hartford*, 2012 VT 55, ¶ 48, 58 A.3d 925, 941 (noting doctrine of stare decisis).  I conclude that it is highly unlikely that the PCR court will address any of Mr. Burke's claims other than ineffective assistance, and that concerns of comity and federalism are no bar to this Court's consideration of Mr. Burke's remaining claims.

However, some of the claims that Mr. Burke raises in this habeas corpus case are not appropriate for resolution here because they are subsumed into his ineffective-assistance claim.  Specifically, Mr. Burke contends that counsel's failure to submit

"documented evidence" that complainant stole some of his personal property was a constitutional violation.  (Doc. 4 at 5; Doc. 33 at 18.)  The record reveals that Mr. Burke testified about the stolen property at trial, *Burke*, 2012 VT 50, ¶ 5, but defense counsel determined not to introduce any paperwork as an exhibit on that topic.  (Doc. 28, Trial Tr. 103–04, May 12, 2010.)  Any challenge to that determination by counsel should be addressed in the PCR proceeding.

Respondent contends that Mr. Burke's allegation of counsel's failure to exclude allegedly biased jurors is also a part of his ineffective-assistance claim.  (Doc. 41 at 27.) Mr. Burke does indeed allege that defense counsel "was constitutionally ineffective for failing to strike [a] juror who admitted bias."  (Doc. 33 at 37.)  However, he also appears to contend that the trial judge failed to acknowledge or question some jurors who had raised their hands in response to the court's question at voir dire about whether the issue of sexual misconduct had ever touched their lives.  (*See* Doc. 44-4 at 2.)  He also contends that only one of the jurors who raised their hand was ultimately excluded, and that he was therefore deprived of his right to an impartial jury.  (*Id.*)  I address those two issues in Part II.F below, but leave any question about defense counsel's performance at the jury draw to the PCR court.

### C.    Conclusion

The Court should continue to decline to review Mr. Burke's ineffective-assistance claim because it is unexhausted and there is no basis for waiving the exhaustion requirement.  As discussed above, with the exception of Petitioner's ineffective-assistance-of-counsel claim—which has been deleted from the Petition—all of Mr.

Burke's claims in this case are exhausted.[7]  The Court should therefore DENY

Respondent's Renewed Motion to Dismiss.

## II.    Cross-Motions for Summary Judgment

Both parties seek summary judgment in their favor on all of Mr. Burke's claims.  I

begin by briefly reciting the applicable legal standards (*infra*, Part II.A).  I then consider

each of Mr. Burke's claims that were analyzed by the Vermont Supreme Court in *Burke*,

2012 VT 50, and are reiterated by Mr. Burke here: speedy trial (*infra*, Part II.B),

evidentiary rulings and the confrontation clause (*infra*, Part II.C), rulings resulting from

Mr. Burke's behavior (*infra*, Part II.D), and sufficiency of the evidence (*infra*, Part II.E).

Next, I address each of Mr. Burke's claims that were summarily dismissed as meritless or

inadequately briefed in *Burke*, 2012 VT 50, and are raised by Mr. Burke here: juror bias

(*infra*, Part II.F), prosecutorial misconduct (*infra*, Part II.G), and erroneous jury charge

---

[7]  Respondent does not raise the issue of procedural default, and I conclude that it is in any case no barrier to federal habeas review of most of Mr. Burke's claims.  There is some authority for the proposition that a state rule regarding the adequacy of appellate briefs might constitute an independent and adequate state procedural bar that would foreclose federal habeas review, *e.g.*, *Roberts v. Thaler*, 681 F.3d 597, 607 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 529 (2012), and in this case the Vermont Supreme Court concluded that at least some of Mr. Burke's claims were inadequately briefed, presumably in violation of V.R.A.P. 28(a)(4).  *See Burke*, 2012 VT 50, ¶ 1 n.*.  However, the *Burke* Court did not articulate precisely which of Mr. Burke's claims ran afoul of Rule 28(a)(4), and thus it is impossible to determine which claims were inadequately briefed.  I therefore conclude that there is a lack of a sufficiently "clear[] and express[]" statement in the *Burke* opinion to create a procedural default on any of the "other" claims that did not receive discussion-level treatment in *Burke*.  *Michigan v. Long*, 463 U.S. 1032, 1033 (1983).  That said, the *Burke* Court did explicitly conclude that one of Mr. Burke's claims on appeal was procedurally defaulted.  *See Burke*, 2012 VT 50, ¶ 26 (concluding that Mr. Burke had waived any claim on appeal that the complainant's aggravated-assault convictions should have been admitted to impeach her credibility).  I address that issue in Part II.C.3, *infra*.

(*infra*, Part II.H). The facts relevant to each of Mr. Burke's claims are set forth as necessary below pursuant to the summary judgment standard.[8]

### A.    Legal Standards

The Court may hear and decide motions for summary judgment in the context of a habeas corpus petition.  *See* Rules Governing § 2254 Cases, Rule 12; *Whitaker v. Meachum*, 123 F.3d 714, 716 n.2 (2d Cir. 1997) ("A district court ruling upon a petition for the writ of habeas corpus may hear motions for summary judgment, as in civil litigation.").  In a summary-judgment motion, the burden is on the moving party to establish that there is "'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "'set forth specific facts showing that there is a genuine issue for trial.'"  *Rubens*, 527 F.3d at 254 (quoting Fed. R. Civ. P. 56(e)).  The Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in its favor.  *Id.*  Where, as here, there are cross-motions for summary judgment, the Court "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'"  *Heublein, Inc. v. United States*, 996 F.2d

---

[8]  The record before the Court is substantial, and includes the docket sheet from Mr. Burke's criminal trial (Doc. 8-1), transcripts of numerous pretrial hearings in Mr. Burke's criminal case between October 2005 and May 2010 (Doc. 28), the jury draw (*id.*), the 247-page transcript of Mr. Burke's three-day May 2010 jury trial (*id.*), and transcripts of posttrial proceedings (*id.*).  The record also includes the docket sheet from Mr. Burke's direct appeal (Doc. 30-1 Ex. I), and copies of the briefs and printed cases filed with the Vermont Supreme Court (*id.* Exs. B, C, D, E, Q).  For present purposes, it is not necessary to recite the full history of all events in the state courts.  Citations to the state court proceedings are included as necessary below.

1455, 1461 (2d Cir. 1993) (quoting *Schwabenbauer v. Bd. of Educ. of Olean*, 667 F.2d 305, 314 (2d Cir. 1981)).

Federal review of state criminal convictions is limited.  Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a state prisoner's habeas application unless the relevant state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).  "Clearly established Federal law" includes only "the holdings, as opposed to the dicta," of the Supreme Court's decisions at the time of the relevant state court decision.  *Carey v. Musladin*, 549 U.S. 70, 74 (2006).

A state-court decision is "contrary to" federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or if the state court decides a case differently than the Supreme Court has on "materially indistinguishable" facts.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  Relief is appropriate under the "unreasonable application" clause of § 2254(d)(1) "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  "The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'"  *Burt v. Titlow*, No. 12-

414, 571 U.S. ___, ___, slip op. at 5, 2013 WL 5904117 (Nov. 5, 2013) (quoting 28

U.S.C. § 2254(e)(1)).  A state court's decision adjudicated on the merits and based on a

factual determination "will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*

*v. Cockrell*, 537 U.S. 322, 340 (2003).  Even where a state court does not explain its

decision, the petitioner still bears the burden of showing that "there was no reasonable

basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784

(2011).  AEDPA intentionally imposes a standard that is difficult to meet; it "requires 'a

state prisoner [to] show that the state court's ruling on the claim being presented in

federal court was so lacking in justification that there was an error . . . beyond any

possibility for fairminded disagreement.'" *Burt*, No. 12-414, slip op. at 6 (quoting

*Harrington*, 131 S. Ct. at 786–87).

**B.**    **Speedy Trial**

   **1.**    **Background**

   The facts pertaining to Mr. Burke's speedy-trial claim are set forth in *State v.*

*Burke*, 2012 VT 50, and are largely undisputed.[9]  As the Vermont Supreme Court noted,

the procedural history of Mr. Burke's criminal case is "lengthy and convoluted":

> Between October 20, 2005, when defendant was arraigned, and May 10,
> 2010, when the trial commenced, defendant filed approximately 190
> motions—in writing and orally on the record—including motions to
> disqualify three trial court judges, a motion to disqualify a prosecutor, and
> nineteen motions for sanctions.  Defendant requested a speedy trial at his

---

[9]  In his Statement of Undisputed Material Facts (Doc. 35), Mr. Burke makes only a few
allegations relating to the speedy-trial issue, most of which are consistent with the *Burke* Court's
summary.  In the discussion below, I have noted what I understand to be the disputes that Mr. Burke does
raise.

arraignment on October 20, 2005, and the court offered to schedule a jury draw in either November or December of that year.  Defendant requested that the trial be scheduled in February, and the court made accommodations, indicating that it would schedule a jury draw for the trial in February 2006.  Between October and February, defendant, acting pro se, filed approximately thirty motions.  Defendant was notified that each time he filed a motion, it stopped the "speedy trial clock."

2012 VT 50, ¶ 7.  Mr. Burke also made other requests, including a request on December 12, 2005 to delay taking depositions until certain test results came back.  *Id.* ¶ 8.  "On July 2, 2007, over a year and a half later, . . . defendant continued to stress that he was not ready to begin taking depositions because the discovery process was ongoing."  *Id.*  Mr. Burke also made a variety of requests with respect to the appointment of standby counsel; "[b]etween October 2007 and February 2008, defendant requested, was provided with, and then dismissed standby counsel."  *Id.* ¶ 9.

"By mid-April 2008, defendant, acting pro se, began depositions."  *Id.* ¶ 10.  "At a status conference on September 23, 2008, the court set a jury draw date for December 8, but defendant again objected, declaring, 'I think it's premature to be talking about a jury draw when we're—we're still in the process of obtaining discovery.'"  *Id.*  "Between November 2008 and January 2009, the parties disagreed about the manner in which complainant's deposition would be taken."  *Id.* ¶ 11.  After an issue concerning the appointment of full-time counsel for Mr. Burke was resolved, defense counsel filed complainant's deposition on September 18, 2009.  *Id.*

"At a hearing on October 14, 2009, defendant sought to dismiss his court-appointed counsel, but the court questioned whether he was competent to proceed pro se."  *Id.* ¶ 12.  The court ultimately concluded that Mr. Burke was competent to stand

14

trial, but found that he had forfeited the right to represent himself because of his long

course of disruptive behavior. *Id.* Trial commenced on May 10, 2010. *Id.* ¶ 13.

### 2. Speedy Trial Act

Mr. Burke asserts that in his case the federal 70-day speedy trial limit was

violated. (Doc. 33 at 43.) I presume that Mr. Burke is referring to the following

provision of the Speedy Trial Act (STA):

> In any case in which a plea of not guilty is entered, the trial of a defendant
> charged in an information or indictment with the commission of an *offense*
> shall commence within seventy days from the filing date (and making
> public) of the information or indictment, or from the date the defendant has
> appeared before a judicial officer of the court in which such charge is
> pending, whichever date last occurs. If a defendant consents in writing to be
> tried before a magistrate judge on a complaint, the trial shall commence
> within seventy days from the date of such consent.

18 U.S.C. § 3161(c)(1) (emphasis added). Although Mr. Burke has exhausted his

contention that his constitutional right to a speedy trial was violated, this appears to be

the first time he has asserted a violation of the STA and thus the claim is not exhausted.

Nevertheless, the Court should reach the merits of the STA claim because, for the reasons

described below, it is not "'even a colorable federal claim.'" *Plunkett v. Johnson*, 828

F.2d 954, 956 (2d Cir. 1987) (quoting *Granberry v. Greer*, 481 U.S. 129, 135 (1987)).

The STA defines an "offense" in pertinent part as "any Federal criminal offense

which is in violation of any Act of Congress and is triable by any court established by

Act of Congress." 28 U.S.C. § 3172(2). Here, Mr. Burke was not charged with a federal

criminal offense; he was charged with sexual assault in violation of Vermont state law,

namely 13 V.S.A. § 3252(a)(1). Thus the STA does not apply in this case. *See United*

*States v. Simmons*, 923 F.2d 934, 955 (2d Cir. 1991) ("[T]he statutory time limits

imposed by the Speedy Trial Act begin to run after the *federal* arrest . . . .").  The Court

should therefore reject Mr. Burke's STA claim.

### 3.      Sixth Amendment

Mr. Burke contends that the Vermont Supreme Court incorrectly concluded that

his Sixth Amendment right to a speedy trial was not violated.  (*See* Doc. 4 at 6.)

According to him, he "had to litigate for years to obtain long with[]held discovery."

(Doc. 35 at 6.)  He also contends that the delays were caused by the State and the trial

court, and notes that he filed several motions to dismiss on speedy-trial grounds.  (Doc.

33 at 21, 23).  Finally, he asserts that "the State & bias[ed] court worked together to

harass defendant with bogus competency hearings they kept on continuing."  (*Id.* at 23.)

Respondent maintains that the Vermont Supreme Court properly determined that Mr.

Burke was not denied a speedy trial.  (Doc. 41 at 12–15.)

I conclude that the *Burke* Court's decision on Mr. Burke's speedy-trial claim was

not contrary to, or an unreasonable application of, clearly established federal law, nor was

it based on an unreasonable determination of the facts.  "The right of an accused to a

speedy trial is guaranteed by the sixth amendment, U.S. Const. amend. VI, and is

imposed upon the states by the due process clause of the fourteenth amendment."

*Rayborn v. Scully*, 858 F.2d 84, 88 (2d Cir. 1988) (citing *Klopfer v. North Carolina*, 386

U.S. 213, 223 (1967)).  As Mr. Burke himself notes (Doc. 33 at 23), constitutional

speedy-trial claims are analyzed using the four-part balancing test set forth in *Barker v.

Wingo*, 407 U.S. 514, 530 (1972).  *See State v. Vargas*, 2009 VT 31, ¶ 11, 971 A.2d 665,

16

631 (mem.) (listing factors: "(1) the length of the delay; (2) the reason for the delay; (3) the extent to which the defendant asserted the speedy trial right; and (4) any prejudice that accrued to the defendant as a result of the delay"). The *Burke* Court applied that test in its analysis of Mr. Burke's speedy-trial claim. 2012 VT 50, ¶ 14 (citing *Vargas*, 2009 VT 31, ¶ 11).

The Vermont Supreme Court's application of the four *Barker* factors was a reasonable application of established federal law. The Court recognized that the length of delay in this case was significant, and that Mr. Burke had asserted his speedy-trial right on at least five occasions. *Id.* ¶¶ 15, 17. However, the Court also concluded that the delay was "primarily caused by defendant's own actions," and that his assertions of his right to a speedy trial were "often simultaneous with his own actions to postpone trial." *Id.* ¶¶ 16, 17. The Supreme Court also determined that, because Mr. Burke caused significant delay, he could not assert that he had prejudiced himself. *Id.* ¶ 18. To the extent that Mr. Burke attempts to dispute the Vermont Supreme Court's factual conclusions, he has failed to cite any support in the record that might suggest objective unreasonableness. The *Burke* Court's determinations are not in conflict with any clearly established federal law. *See Vermont v. Brillon*, 556 U.S. 81, 92–93 (2009) (criminal defendant's repeated dismissals of counsel and deliberate attempts to disrupt proceedings weighed against him and against finding a speedy-trial violation).

## C.    Evidentiary Rulings and the Confrontation Clause

There is no dispute that the complainant in Mr. Burke's sexual-assault case had previously been charged with or convicted of certain offenses, and Mr. Burke sought to

17

introduce evidence of those charges or convictions. Specifically, he "sought to introduce evidence that complainant was convicted of property theft in 2004, and that both complainant and her friend were convicted of aggravated assault in 2005." *Burke*, 2012 VT 50, ¶ 23.[10] Mr. Burke also sought to introduce evidence regarding alleged false accusations of sexual assault made by complainant. "Purportedly, complainant and complainant's friend accused a third party of sexually assaulting complainant's friend." *Id.* ¶ 19. The trial court precluded the evidence regarding the alleged false accusation of sexual assault and the evidence of complainant and her friend's prior charges or convictions, and later affirmed those rulings in an Entry on Mr. Burke's motion for a new trial. (*See* Doc. 30 Ex. D, at 29–31.) The Vermont Supreme Court later affirmed both of those evidentiary determinations. *Burke*, 2012 VT 50, ¶¶ 19–26.

I begin by noting that "state trial court evidentiary rulings generally are not a basis for habeas relief." *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). If the state trial courts erred on an evidentiary issue, habeas relief would only be available where the error resulted in a violation of "fundamental conceptions of justice." *Vega*, 699 F.3d at 126 (internal quotation marks omitted). Here, Mr. Burke reiterates his contention to the Vermont Supreme Court: his Sixth Amendment right of confrontation was violated as a result of the trial court's evidentiary rulings.

---

[10] Respondent states that the complainant was charged with, but not convicted of, a property crime. (Doc. 41 at 26.) Indeed, Mr. Burke's proffer on that issue "did not indicate that the complainant was convicted, only that she was charged." *Burke*, 2012 VT 50, ¶ 25.

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (quoting U.S. Const. amend VI). "The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings means more than being allowed to confront the witness physically." *Id.* (citation and internal quotation marks omitted). "Indeed, the main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*." *Id.* (internal quotation marks omitted). However, the Confrontation Clause leaves trial judges "wide latitude" to exclude evidence that is "repetitive . . ., only marginally relevant[,] or poses an undue risk of harassment, prejudice, [or] confusion of the issues." *Crane v. Kentucky*, 476 U.S. 683, 689–90 (1986) (internal quotation marks omitted). The Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." *Id.* at 690.

### 1.   Complainant's Alleged Prior False Sexual-Assault Accusations

The Vermont Supreme Court held that the trial court properly excluded the evidence about complainant's alleged prior false accusation that a third party sexually assaulted complainant's friend. *Burke*, 2012 VT 50, ¶¶ 19–21. Specifically, the Supreme Court affirmed the trial court's conclusion that Vermont's Rape Shield Law, 13 V.S.A. § 3255(a)(3)(C), did not apply because the evidence did not relate to the *complainant's* prior sexual conduct or to a false allegation of sexual assault against her. *Burke*, 2012 VT

19

50, ¶ 20.  The Supreme Court also affirmed the trial court's analysis under Vermont Rule of Evidence 403, and concluded that the probative value of the evidence was low, and that its admission would be likely to distract the jury and confuse the issues.  *Id.* ¶ 21. All of those conclusions are well reasoned and squarely within the latitude to exclude evidence through the application of well-established evidentiary rules.  Mr. Burke has failed to establish any error on this point, let alone an error of constitutional magnitude.

### 2.    Evidence of Complainant's Alleged Property Crime

There was also no fundamental error in the exclusion of evidence of complainant's alleged theft.  The Vermont Supreme Court concluded that, even if the evidence of theft was evidence of a crime involving truthfulness or falsification—as required by Vermont Rule of Evidence 609—the evidence that Mr. Burke provided in support of his proffer did not indicate that complainant was ever *convicted* of the crime charged.  *Burke*, 2012 VT 50, ¶ 25.  This was again a straightforward application of a well-established evidentiary rule; the Supreme Court's decision was not contrary to, or an unreasonable application of, federal law.

### 3.    Evidence of Complainant's Conviction for Aggravated Assault

At trial, Mr. Burke sought to introduce evidence of complainant and her friend's convictions for aggravated assault in order to highlight his claim that complainant falsely claimed that the victim of the aggravated assault had sexually assaulted her friend.  The Vermont Supreme Court explicitly rejected that contention.  *Burke*, 2012 VT 50, ¶ 26. The Court reasoned that, because evidence about complainant's alleged false sexual assault allegations was properly excluded, admission of complainant's aggravated-assault

20

conviction offered to support the same contention was also properly excluded. *Id.* That conclusion is not contrary to or an unreasonable application of federal law.

With respect to Mr. Burke's claim that he should have been permitted to present evidence of complainant and complainant's friend's convictions to impeach complainant's credibility, the Supreme Court concluded that, since the defense had only offered the evidence to support a claim that complainant made false sexual-assault allegations, the issue of offering the evidence to impeach complainant's credibility was not preserved for appeal. *Burke*, 2012 VT 50, ¶ 26. Mr. Burke maintains that the Vermont Supreme Court's characterization of his position is incorrect. According to him, he also offered the evidence to impeach complainant's credibility. (*See* Doc. 33-2 at 2.) Because the Vermont Supreme Court rejected Mr. Burke's argument as unpreserved for appellate review, this raises a question about whether the claim is procedurally defaulted. *See Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." (quoting *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996))).

Some additional procedural history is necessary to discuss this issue. At a status conference early in the criminal case, the State represented that complainant was convicted of an aggravated assault upon Seth Randall, and that the "precipitating factor" for the assault was her belief that Seth Randall had molested someone. (Doc. 28, Status Conference Tr. at 71:2–6, July 2, 2007.) The record indicates that, at the jury draw the day before trial, defense counsel stated: "I'm not necessarily looking to introduce the fact

that she's got a felony conviction necessarily but I would like to inquire about the fact

that she made the allegation and that it was wrong."  (Doc. 28, Jury Draw Tr. at 194:15–

18, May 10, 2010.)  In an entry dated May 11, 2010, the trial court ruled, in pertinent

part, as follows:

> The court will not permit cross-examination of the complaining
> witness regarding the assault on Seth Randall, including conviction
> therefore.  It is not a false allegation within the meaning of the rape shield
> statute.   That statute, 13 V.S.A. § 3255(3), deals with the "prior sexual
> conduct of the complaining witness."  Whenever the word "it" appears after
> that phrase, it refers to that phrase, the prior sexual conduct of the witness.
> When subsection (C) speaks of false allegations, they must also relate to
> her prior sexual conduct.  Her acts possibly relating to the sexual conduct of
> a third person upon a fourth person is not within the meaning of the statute.
> The court will also not see this trial sent into a tangent of trying a wholly
> different case, or in this case two different cases—the wrongdoing of
> Randall plus the assault upon him.

(Doc. 30, Ex. D, at 21.)  In a November 8, 2010 ruling on Mr. Burke's motion for a new

trial, the trial court addressed the question of whether the evidence "is admissible for

impeachment purposes," and concluded that it was not because it was "not even slightly

probative" on the issue of whether Mr. Burke sexually assaulted the complainant.  (Doc.

30, Ex. D, at 29.)

It is true that "an unsupported . . . finding of procedural default would not

constitute an adequate state ground barring federal habeas relief."  *Silverstein v.*

*Henderson*, 706 F.2d 361, 368 n.11 (2d Cir. 1983).  Here, the trial court's

November 8, 2010 ruling might be seen as evidence that the trial court felt the defense

had raised the issue of the admissibility of complainant's aggravated assault for

impeachment purposes.  However, defense counsel's statement at the jury draw is some

22

evidence that would support the conclusion that the defense had not preserved for appellate review the admissibility question of complainant's aggravated assault for impeachment purposes.  I cannot conclude that the Vermont Supreme Court's determination was wholly unsupported, and I therefore conclude that Mr. Burke's claim on this point is procedurally defaulted.

That claim is thus barred unless Mr. Burke can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  To show prejudice, a petitioner must establish that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).  In other words, the petitioner must show that the favorable evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Strickler v. Greene*, 527 U.S. 263, 290 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).  Mr. Burke has not made that showing.  Even if exclusion of the evidence of complainant's aggravated-assault conviction was an error, it would not undermine confidence in the verdict.  Both Mr. Burke and complainant testified and were thoroughly cross-examined; and the absence of any mention of complainant's aggravated-assault conviction was not an omission that put the case in an entirely different light.

I also conclude that Mr. Burke cannot demonstrate a fundamental miscarriage of justice stemming from the omission of evidence of complainant's aggravated-assault

conviction. "A *habeas* petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). Mr. Burke does contend that he is actually innocent, but he fails to demonstrate—as he must—that "'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Here, even if evidence of complainant's aggravated-assault conviction had been admitted, a reasonable juror could still have convicted Mr. Burke based on the other evidence.

### 4.    Conclusion as to Evidentiary Rulings

The Vermont courts excluded, or found no error in the exclusion of, certain evidence that Mr. Burke sought to have admitted. Those determinations are all well reasoned, and do not remotely approach a Confrontation Clause violation. Mr. Burke's regret that this evidence was not admitted is insufficient to demonstrate a constitutional violation or denial of a fundamentally fair trial.

### D.    Rulings Resulting from Mr. Burke's Behavior

### 1.    Physical Restraints at Trial

Mr. Burke was required to wear shackles at trial. The Vermont Supreme Court noted, and my review of the record confirms, that "[o]n numerous occasions, defendant threatened the State's attorney, his own attorney, the court, and others." *Burke*, 2012 VT 50, ¶ 30. The trial court ordered that defendant be shackled during trial, and gave detailed reasoning on the record for that decision. *Id.* The trial court also "took steps to

minimize attention and prejudice caused by the shackles, including a privacy skirt around counsel table and seating defendant in the courtroom before the jury entered." *Id.* In rejecting any claim of error in Mr. Burke's physical restraint during trial, the *Burke* Court cited *Deck v. Missouri*, 544 U.S. 622 (2005), and stated: "In light of defendant's continual threats of physical violence, the fact that the court took precautions to minimize prejudice, and because of the court's detailed reasoning on the record, we conclude that the trial court did not abuse its discretion by ordering that defendant be shackled during trial." *Burke*, 2012 VT 50, ¶ 30.

That conclusion by the Vermont Supreme Court was not based on an unreasonable determination of the facts, and was not contrary to, or an unreasonable application of, federal law.  The Court properly cited and applied *Deck*.  In that case, the United States Supreme Court stated that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury *absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial*." *Deck*, 544 U.S. at 629 (emphasis added).  Here, the trial court exercised its discretion and made precisely the determination contemplated by *Deck*; and that decision is amply supported by the record, which evidences numerous threats of physical violence against individuals who appeared in the courtroom.  Moreover, the trial court took steps to minimize the prejudice.  The Vermont Supreme Court properly concluded that the trial court was within its discretion when it made the "individualized security determination[]" to have Mr. Burke physically restrained.  *Id.* at 632.

## 2.      Self-Representation

As the Vermont Supreme Court noted, "[d]uring the course of pretrial proceedings, defendant expressed discontent with various appointed counsel." *Burke*, 2012 VT 50, ¶ 9.  The trial court observed that he made "repeated motions to fire his attorneys, represent himself, and then be assigned replacement counsel."  (Doc. 30, Ex. D, at 3.)  Shortly before trial, he again moved to fire his counsel and represent himself. (*Id.*)  In a 12-page Entry dated November 16, 2009, the trial court concluded that Mr. Burke's behavior resulted in the forfeiture of his right to represent himself.  (*Id.* at 14.) As an example, the trial court cited Mr. Burke's behavior at the October 14, 2009 hearing:

> [D]uring the entire hearing, Mr. Burke never spoke at a normal volume.  He constantly repeated his arguments regardless of the questions or statements of the other participants.  He interrupted everyone, including the judge, continuously.  He strung together sentences without the slightest pause as he worked himself into a frenzy and remained in an excited state throughout the hearing.  He was so overcome with emotion that he was never able to listen and respond appropriately to the statements or questions of others.

(*Id.* at 9.)  The court remarked that "[g]iven Mr. Burke's conduct in the courtroom during a formal hearing, it is naive to expect that Mr. Burke would control himself were he to represent himself during the trial."  (*Id.* at 10.)  The trial court concluded as follows:

> It is our determination that Mr. Burke has engaged in serious and obstructionist misconduct in this court over the course of years.  The most recent hearing on October 14th is merely one more example.  Whether Mr. Burke's disruptive behavior is caused by mental problems that prevent him from competently representing himself, or whether . . . [the] behavior is deliberate and intentional, the effect is the same and the result is forfeiture of his right to represent himself.

(*Id.* at 14.)  The Vermont Supreme Court affirmed that decision, concluding that "[t]he trial judge made a reasoned decision amply supported by the record."  *Burke*, 2012 VT 50, ¶ 28.

Those conclusions were not based on an unreasonable determination of the facts, and were not contrary to, or an unreasonable application of, federal law.  Both the trial court and the Vermont Supreme Court correctly applied the applicable federal law regarding a defendant's right to self-representation.  Namely, the right of self-representation "is not absolute," *Indiana v. Edwards*, 554 U.S. 164, 171 (2008), and the right may be forfeited by a defendant who "deliberately engages in serious and obstructionist misconduct," *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).  Here, the record supports the trial court's findings that Mr. Burke's behavior was "serious and obstructionist misconduct," and thus the court properly decided that Mr. Burke had forfeited his right to represent himself.

### E.    Sufficiency of the Evidence; Cruel and Unusual Punishment

Mr. Burke argued at trial, on direct appeal, and now here, that he is actually innocent, and that complainant consented to having sex with him.  (*See* Doc. 4 at 5; Doc. 33 at 12; *Burke*, 2012 VT 50, ¶ 32.)  Respondent disagrees, maintaining that the evidence of guilt was not only sufficient but "compelling."  (Doc. 40-1 at 30.)

A habeas court reviewing a state-court criminal conviction for sufficiency of the evidence must inquire whether, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Gutierrez v. Smith*, 702 F.3d 103, 113 (2d Cir. 2012)

(quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Here, the only element of sexual assault in dispute was whether complainant consented.  On that element—as Mr. Burke adamantly asserts—the case was reduced to a question of Mr. Burke's word against complainant's.  (*See* Doc. 33 at 15.)  Mr. Burke continues to maintain that his version of the events is correct.  But this Court's review does not include a retrial of Mr. Burke's case.  *Gutierrez*, 702 F.3d at 113.  The jury believed complainant, and the evidence in the light most favorable to the prosecution was sufficient for a rational trier of fact to reach that conclusion.

Mr. Burke also contends that his trial resulted in a violation of his right "to be free from cruel and harsh punishment of a[n] innocent defendant."  (Doc. 4 at 6.)  That claim is not cognizable on habeas review because Mr. Burke does not allege that the statute under which he was sentenced—13 V.S.A. § 3252(a)(1)—is itself unconstitutional, nor does Mr. Burke contend that the sentence imposed fails to comply with Vermont law.  *See Chebere v. Phillips*, No. 04 Civ. 296(LAP), 2013 WL 5273796, at *31 (S.D.N.Y. Sept. 18, 2013) (noting that, in order to state an Eighth Amendment claim on habeas review, a petitioner must allege that the statute under which he was sentenced is itself unconstitutional, or that the sentence imposed fails to comply with state law).  Even if Mr. Burke had made those arguments, they would be unavailing.  Mr. Burke received an eighteen-to-twenty-year sentence, *Burke*, 2012 VT 50, ¶ 1, which does not exceed the 20-year maximum authorized by the provisions of 13 V.S.A. § 3252 applicable to his case.[11]

---

[11]  Section 3252 was amended in 2006—after Mr. Burke was charged—and increased the maximum sentence for violations of § 3252(a) to life imprisonment under § 3271.

Moreover, the Vermont Supreme Court has already decided that the sentence does not violate Vermont's indeterminate sentencing law, 13 V.S.A. § 7031. *Burke*, 2012 VT 50, ¶ 31. Finally, the sentence is not unconstitutionally disproportionate to the crime.

No extended analysis is necessary on that last point. *See Solem v. Helm*, 463 U.S. 277, 290 n.16 (1983) ("In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate."). Sexual assault is a grave crime warranting a very substantial punishment. The punishment imposed is heavy, but does not "shock[] the collective conscience of society," *United States v. Gonzales*, 922 F.2d 1044, 1053 (2d Cir. 1991). And other jurisdictions impose comparable sentences for similar crimes. *See Pressley v. Bennett*, 235 F. Supp. 2d 349, 368 (S.D.N.Y. 2003) (listing comparable sentences for sex crimes in New York and elsewhere).

Mr. Burke's Eighth Amendment argument is really a restatement of his attacks on the verdict. *See Myres v. United States*, 256 F. 779, 782 (5th Cir. 1919) ("Any punishment of an innocent man would be cruel and unusual; but his grievance would be against the verdict, and not against the sentence."). Mr. Burke has not alleged an Eighth Amendment violation that stands independent of any of his other claims.

## F.     Impartial Jury

Mr. Burke contends that his jury was "unlawfully picked" because "most admitted [they] were victims of sexual misconduct." (Doc. 4 at 5.) He argues that the trial judge failed to acknowledge or question some jurors who had raised their hands in response to

29

the court's question at voir dire about whether the issue of sexual misconduct had ever touched their lives.  (*See* Doc. 44-4 at 2.)  In an affidavit, Mr. Burke contends that, when the judge asked jurors about whether the issue of sexual misconduct had ever touched their lives, the judge only counted four raised hands, while Mr. Burke counted nine.  (Doc. 44-5, Burke Aff. at 1–2, July 15, 2013.)  He also contends that only one of the jurors who raised their hand was ultimately excluded, and that he was therefore deprived of his right to an impartial jury.  (Doc. 44-4 at 2.)

Respondent cites the transcript of the jury draw, and maintains that it shows that two of the jurors who had raised their hands were excused, and that the remaining jurors indicated that they could fairly and impartially consider the evidence despite their prior experiences.  (Doc. 41 at 27–28 n.8.)  In order to address this issue, it is necessary to delve into the record in some detail.  This Court has before it the transcript of the May 10, 2010 jury draw, and I refer to that for the following background.

At the jury draw, the judge stated: "I want to ask the folks in the farthest back row. Has the issue of sexual misconduct ever touched your life?"  (Doc. 28, Jury Draw Tr. at 97:7–9, May 10, 2010.)  He then said: "All right.  So 1, 2, 3, 4 Ms. Mellon you raised your hand?"  (*Id.* at 97:9.)  The trial court then asked the juror a series of questions about her experiences, and then stated: "Anybody else in the last row who has had the issue of improper sexual contact touch your life?  All right and if you recall something later on, you let me know later on."  (*Id.* at 97–99.)  The trial court then posed the same question to the "middle row," and asked a series of questions about the experiences of two more jurors.  (*Id.* at 99–103.)

30

At the end of that exchange, the trial court said, "Anybody else in that row ever had the issue of improper sexual conduct affect your life or the life of someone close to you?  Okay.  So now we're going to move down one row.  The same question."  (*Id.* at 103:25–104:4.)  The court had an exchange with another juror, who had indicated yes.  (*Id.* at 104–06.)  Finally, the court said, "Anybody else in that row who has had the issue of sexual misconduct affect your life, touch your life in some way?  No one.  Okay.  So let me move to the front row."  (*Id.* at 106:12–15.)  One more discussion followed with a juror, and the court stated: "Okay, anybody else in the front row who would raise their hand to the question of has the issue of sexual misconduct touched your life? . . . Good.  Anybody else who, you know, in the course of 5 or 10 minutes is now recalling yeah, I should have raised my hand?  All right.  So I'm going to let the lawyers ask you some questions . . . ."  (*Id.* at 109:1–13.)

Both the prosecutor and defense counsel posed some of their own questions before the defense returned to the issue of the jurors' experiences with sexual misconduct:

> The Judge asked you questions this morning of a sexual nature and as you recall, he went down row by row by row by row.  Those are difficult questions to answer and I suspect maybe that there's more information out there than—than you can know and so if in your heart you decide that you cannot sit on this case for whatever reasons that you may have personally to yourself now is the time, now is the time to say that.  And simply say I—I don't want to sit on this case.  I cannot be fair and impartial because that's the test that I cannot put aside.  And almost everybody here said that they could put that aside and we would hold you to that but now is the opportunity to back out.  Yes, sir?

(*Id.* at 154:20–155:7.)  Two jurors responded in the affirmative and, after asking if there was "[a]nybody else," the defense thanked the jury.  (*Id.* at 155.)  The trial court then

31

stated: "I'm going to excuse Ms. Mellon and Mr. Sisson at this time." (*Id.* at 155.) Two additional jurors replaced the vacated seats, and both of them indicated that they would not have raised their hands on the question of improper sexual contact impacting their lives. (*Id.* at 156–57.)

At the bench conference that followed, the prosecutor stated that he did not have any challenges for cause, and the defense counsel stated that he did not have any challenges for cause "other than what you've already dismissed." (*Id.* at 163:24–164:1.) The parties then used their peremptory challenges, and the defense struck Mr. Ciplicki and Mr. Buzas, among others. (*Id.* at 165:24–166:4.) Of the five jurors who had discussed the question of sexual misconduct with the judge, only Mr. Peters remained on the panel.

The indisputable record of the jury draw establishes that the trial judge methodically asked each row of jurors about the impact of sexual misconduct on their lives, discussed the issue with five jurors who indicated yes, and ultimately excused two for cause and two more as a result of peremptory challenges. The judge gave ample opportunities for each individual to respond, and defense counsel in a follow-up question did the same. Mr. Peters—who remained on the panel—had indicated after some discussion with the trial court that the events he recalled would not have an effect on his thinking as he listened to the witnesses. (*Id.* at 102–03.)

Mr. Burke has a constitutional right to an impartial jury. U.S. Const. amend VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."). However, it does not follow that any juror who has

indicated that the issue of sexual misconduct has touched his or her life must be excluded

from the jury in a sexual assault case as impliedly biased.  As the Ninth Circuit reasoned:

> [W]e see no basis for implying bias as a matter of law solely because [the juror] was the spouse of a rape victim. As a practical matter, many prospective jurors have close family members or friends who have suffered similar encounters. It is the role of voir dire to ferret out such relationships, and to develop the extent to which the juror's ability to be impartial in the particular case is actually, or presumptively, affected. For those revelations that occur during voir dire, the remedy is a cause challenge; for those that occur during trial, the remedy is a contemporaneous proceeding during which the trial court can preserve the integrity of the jury; for those that occur after trial, the remedy is a post-trial hearing. Here, the evidentiary hearing showed no actual effect of his wife's experience, or of their conversations, on [the juror's] ability to be fair and impartial.

*Fields v. Brown*, 503 F.3d 755, 774 (9th Cir. 2007); *see also Fitzgerald v. Greene*, 150

F.3d 357, 365 (4th Cir. 1998) (declining to imply juror's bias in a case involving sexual

offenses where the juror's granddaughter had been molested); *Gonzales v. Thomas*, 99

F.3d 978, 989–90 (10th Cir. 1996) ("To hold that no rape victim could ever be an

impartial juror in a rape trial would, we think, insult not only all rape victims, but also our

entire jury system . . . .").[12]  I therefore reject Mr. Burke's contention that all jurors who

raised their hands in response to the trial judge's questioning should have been excused

for cause as a matter of law.

    With respect to actual bias, Mr. Burke has not shown any error in seating Mr.

Peters as a juror.  The effect of Mr. Peters's experiences on his impartiality depends on

"purely personal considerations," such as the similarity of Mr. Peters's experiences to the

facts in Mr. Burke's case and whether Mr. Peters's experiences were contemporaneous to

---

[12] I recognize that the words "rape" and "victim" were controversial at Mr. Burke's trial; they are used here solely to provide accurate quotations.

the trial and had a continuing impact on him. *Fields*, 503 F.3d at 775. Here, the trial court did not pry into the specifics of Mr. Peters's experiences, but the court did discover that these experiences were not recent; one occurred approximately 15 years before the trial, and the other more than 40 years before the trial. (Doc. 28, Jury Draw Tr. at 102:12–13, May 10, 2010.) Neither incident involved the police, and Mr. Peters indicated that, although he thought about both events occasionally, he did not feel they would affect his thinking as he listened to witnesses in the case. (*Id.* at 102–03.) In light of Mr. Peters's honest responses that revealed a potentially disqualifying relationship, and his representations that he could fairly decide the case, there was no error in declining to strike him for actual bias.

Turning to Mr. Burke's other claim of juror bias, as noted above, the parties dispute what happened at the jury draw. In an affidavit, Mr. Burke contends that, when the judge asked jurors about whether the issue of sexual misconduct had ever touched their lives, the judge only counted four raised hands, while Mr. Burke counted nine. (Doc. 44-5, Burke Aff. at 1–2, July 15, 2013.) Respondent, on the other hand, cites the transcript of the jury draw, maintaining that it shows that two of the jurors who had raised their hands were excused and the remaining jurors indicated they could fairly and impartially consider the evidence despite their prior experiences. (Doc. 41 at 27–28 n.8.)

I conclude that Mr. Burke's affidavit does not create a genuine issue of material fact as to whether the trial judge identified all the jurors who raised their hands. Although Mr. Burke says that he saw nine jurors raise their hands, the record recounted above demonstrates that the trial court went through the panel row by row, and identified

five jurors who indicated that the issue of sexual misconduct had touched their lives.  The trial court also gave ample opportunities for others to speak up if they had been missed. In light of that indisputable record, this Court need not adopt Mr. Burke's version of the facts for purposes of ruling on the summary-judgment motions.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").  I conclude that Mr. Burke has failed to show that there was no reasonable basis for the state court to deny relief based on juror bias.  *See Burt v. Titlow*, No. 12-414, 571 U.S. ___, ___, slip op. at 6, 2013 WL 5904117 (Nov. 5, 2013) (AEDPA requires petitioner to show that there was an error "'beyond any possibility for fairminded disagreement'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011)).

### G.    Alleged Prosecutorial Misconduct

Mr. Burke raises two incidents that he maintains prove prosecutorial misconduct. First, he asserts that, in derogation of a stipulation with the defense, the prosecution promoted complainant's belief that Mr. Burke had administered a "date rape drug." (Doc. 33 at 13; Doc. 35 at 2.)  Second, he appears to assert that the prosecution violated a court order excluding use of the term "victim."  (Doc. 4 at 5; Doc. 35 at 4–5.)

### 1.    "Date Rape Drug"

In a stipulation dated November 2, 2007, the defense and prosecution executed a written stipulation that stated in pertinent part as follows:

    1.      Wine, consisting of an opened Bolla bottle and an opened Wild Irish Rose bottle, and towels and pillow cases were sent to the Vermont Department of Public Safety Forensic Laboratory and FBI laboratory to determine whether a so-called date rape drug was detected in the wine or in the vomit located on those items.  The lab reported that no regulated drug was detected in or on the specimens.

    2.      The parties further stipulate that had the sheets from the bed and a shirt found on the bed been sent to the laboratories, the results would have been the same: that is, no regulated drug would have been detected in or on the specimens.

(Doc. 30, Ex. Q, at 651.)  The trial court read the stipulation to the jury shortly before closing the evidence.  (Doc. 28, Trial Tr. 19–20, May 13, 2010.)

Prior to trial, the prosecution sought an order precluding the defense from arguing that the meaning of the stipulation is that Mr. Burke did not administer a date rape drug on or about July 24, 2004.  (Doc. 28, Jury Draw Tr. 200:18–21, May 10, 2010.) According to the prosecution, the sample that was tested was old and the chemical or chemicals at issue could have degraded, and thus the stipulation did not prove that Mr. Burke unequivocally did not administer a date rape drug.  (*Id.* at 203–09.)  The trial court ruled that the prosecution could argue to the jury the possible use of a date rape drug because the stipulation "does not say that [Mr. Burke] did not administer the drug.  It just says that it would not have been found from the sheet and the shirt."  (*Id.* at 210.)

On direct examination, complainant testified that she did not see Mr. Burke pour the wine she drank, and that after drinking the second mug of wine she felt "fuzzy" in a different way than she had felt when she had had two glasses of alcohol in the past. (Doc. 28, Trial Tr. 119–123, May 11, 2010.)  At closing, the prosecution argued that, despite complainant's past experience with drugs, on July 24, 2004, she felt a sensation

36

that she had never felt before and could not move or talk.  (*Id.*, Trial Tr. 24, 29 May 13,

2010.)  The prosecution also argued that it was not required to prove "why, how, or what

did that to her."  (*Id.* at 29.)  The defense, however, asserted that no chemical testing

corroborated a conclusion that complainant had been drugged.  (*Id.* at 39.)

Mr. Burke apparently contends that it was a violation of the November 2007

stipulation to permit any mention of the possibility that a date rape drug was used.  That

contention is without merit.  The stipulation stated that the lab results detected no

regulated drug in the wine, towels, or pillowcases, and that the result would have been the

same if the shirt or sheets had been tested.  As the trial court observed, the stipulation was

silent about whether any drug was administered; it merely stated what the results of

testing were and would have been.  Thus, chemical testing did not support the

prosecution's suggestion that a date rape drug might have been used, but the prosecution

did not violate the parties' stipulation by making the suggestion.  The Vermont Supreme

Court's dismissal of this claim was not a violation or unreasonable application of any

clearly established federal law.

### 2.    Use of the Term "Victim"

In an Entry dated June 18, 2007, the trial court ordered that "[a]t trial the

complaining witness should be referred to by name or as the complaining witness—not

'victim.'"  (Doc. 30, Ex. Q, at 505.)  Respondent admits that, at trial, Detective Duffy

used the word "victim" on a single occasion during his testimony.  (Doc. 41-1 at 4, ¶ 15;

Doc. 28, Trial Tr. 79, May 11, 2010.)  Mr. Burke himself objected, saying "You're not

supposed to be saying the victim.  That's been barred."  (Doc. 28, Trial Tr. 79:12–13,

May 11, 2010.)  The court responded, "Oh, let Mr. Maguire handle it."  (*Id.* at 79:15.)
There was no further objection on that point, and the witness continued testifying.  He did
use the term "victim" again on a two occasions during cross-examination, but there was
no objection.  (*Id.* at 87:2, 24.)

To the extent that Mr. Burke contends trial counsel should have objected to each
use of the word "victim," that would be an ineffective-assistance-of-counsel issue not
proper for resolution in this case.  To the extent that Mr. Burke asserts the trial court
should have taken some action on its own, he fails to assert any error of constitutional
proportions.[13]  To the extent that there was error, Mr. Burke has cited no federal law
holding that a witness's statement of the word "victim" a few isolated times during a
three-day trial amounted to constitutional error.  *See Server v. Mizell*, 902 F.2d 611, 615
(7th Cir. 1990) (in aggravated sexual assault and abuse case, use of the term "victim" in
jury instructions did not raise a colorable federal claim of error).  The Vermont Supreme
Court's opinion dismissing this issue as meritless was not contrary to, or an unreasonable
application of, federal law.

**H.    Jury Charge**

Mr. Burke asserts that the trial court erred by refusing to instruct the jury on the
defense of voluntary intoxication.  (Doc. 4 at 5.)  In its ruling on Mr. Burke's motion for
a new trial, the trial court rejected Mr. Burke's assertions of error with the jury

---

[13]  Indeed, the trial court may have refrained from acting, cognizant of the fact that any objection
might itself call attention to the challenged remark, and leaving it to the defense to weigh the relative
advantages and disadvantages of making an objection.  The trial court's quiescence did not violate any
fundamental conceptions of justice.

instructions.  The court noted that defense counsel did not pursue a diminished-capacity instruction based on voluntary intoxication, and that it was up to the attorney to develop a legal strategy for the case.  (Doc. 30, Ex. D, at 27.)  The court further reasoned that it was harmless error not to give an intoxication instruction because the defense was free to argue that the State failed to prove the element of intent in light of the intoxication evidence.  (*Id.*)

To the extent Mr. Burke alleges that defense counsel's decision not to seek an intoxication instruction was ineffective, that argument should be made in the PCR proceedings.  I review the charge in the present context only to determine whether the omission of a voluntary-intoxication instruction rendered it constitutionally infirm.  A defective jury charge can constitute a due process violation, but only where the instruction "so infected the entire trial that the resulting conviction violates due process." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (internal quotation marks omitted).  Here, the trial court instructed the jury that the State needed to prove defendant's intent to engage in a sexual act.  (Doc. 28, Trial Tr. 56, May 13, 2010.)  The defense was free to argue that Mr. Burke's own intoxication negated that intent.  The Vermont Supreme Court did not violate or unreasonably apply clearly established federal law when it dismissed Mr. Burke's claim attacking the jury charge, because omission of a specific instruction on the issue of voluntary intoxication did not infect the trial with an error of constitutional proportions.  *See Hargrove v. Newton-Embry*, No. CIV-04-1408-F, 2006 WL 1620364, at *21 (W.D. Okla. June 9, 2006) (where instructions required jury to find intent, they allowed jury to evaluate that element in light of consumption of alcohol, and

trial was not fundamentally unfair by omission of an instruction on voluntary intoxication).

## Conclusion

For the foregoing reasons, I recommend that Respondent's Renewed Motion to Dismiss (Doc. 30) be DENIED; Mr. Burke's Motion for Summary Judgment (Doc. 33) be DENIED; and Respondent's Cross-Motion for Summary Judgment (Doc. 40) be GRANTED.  Finally, I recommend Mr. Burke's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) be DENIED.

Dated at Burlington, in the District of Vermont, this 8th day of November, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).